UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
SK CONTRACTORS GROUP, INC.,                          :
d/b/a SK CONTRACTORS, LLC,                           :
                                                     :
                        Plaintiff,                   :        **MEMORANDUM &**
                                                     :        **ORDER**
        -against-                                    :
                                                     :        23-CV-636 (VDO)
DIV005, LLC, MILBANK INVESTMENT                      :
HOLDING, LLC, BELPOINTE CAPITAL                      :
MANAGEMENT, LLC, and POINTE                          :
RESIDENTIAL BUILDERS MILBANK LLC,                    :
                                                     :
                        Defendants.                  :
---------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff SK Contractors Group, Inc. d/b/a SK Contractors, LLC ("SK") brought this action against Defendants for breach of contract (in Count One against Defendant DIV005, LLC ("DIV005") and in Count Two against Pointe Residential Builders Milbank LLC ("Pointe")); misrepresentation (in Count Three against Pointe); and unjust enrichment (in Count Four against Milbank Investment Holdings, LLC ("Milbank") and Belpointe Capital Management, LLC ("Belpointe")). Before the Court is Defendant Milbank, Belpointe, and Pointe's (collectively, the "Milbank Defendants") Motion for Summary Judgment (the "Motion") on Counts Two, Three, and Four of the Plaintiff's Amended Complaint. For the reasons that follow, the Motion is **GRANTED**.

## I.    BACKGROUND

### A.    Factual Background

The following facts are taken from the Milbank Defendants' Local Rule 56(a)(1) Statement of Undisputed Material Facts,[1] SK's Local Rule 56(a)(2) Response to the Statement of Facts,[2] the Amended Complaint,[3] the Answer,[4] and the record. The facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). The facts as described below are in dispute only to the extent indicated.

#### 1.    The Parties and Governing Contracts

Milbank is the owner and developer of the construction project located at 71 Havemeyer Place in Greenwich, Connecticut, consisting of two three-story residential buildings containing thirty rental apartments (the "Project").[5] Milbank retained Pointe as the general contractor to manage and oversee construction.[6] To carry out the structural steel

---

[1] ECF No. 125-16.

[2] ECF No. 138. In this response, as well as in the original Motion, the Milbank Defendants urge the Court to deem the facts in their Rule 56(a)(1) Statement as admitted based on SK's failure to attach its Local Rule 56(a)(2) Statement in its original filing. The Court declines to do so. Though ECF No. 139 is indeed undated, any concerns that the document was not drafted contemporaneously with the filing of Response are assuaged by the fact that the document is identical to the one Plaintiff attached to his filing at ECF No. 119, Response to Motion for Pre-Filing Conference, filed in advance of the Motion. While the omission (of both the Local Rule 56(a)(2) statement as well as another exhibit referenced by the Response) reflects carelessness on Plaintiff's counsel's part, the Court is disinclined to adjudicate a motion for summary judgment on the basis of a filing error where the relevant information was otherwise available on the docket. Moreover, given that Defendants' counsel had already seen the identical filing at ECF No. 119, the Court notes that it would have been courteous to alert Plaintiff to the omission rather than proceed as though the Rule 56(a)(2) Statement did not exist.

[3] ECF No. 58.

[4] ECF No. 63.

[5] ECF No. 138 ¶ 1.

[6] *Id.* ¶ 2.

fabrication and erection work for the Project, Pointe entered into a written subcontract with DIV005 on or about December 28, 2021 ("Milbank Agreement").[7] The Milbank Agreement provided for a total contract price of $2,375,000 for DIV005's steel fabrication and scope of work.[8] It provided that DIV005 "shall provide sufficient organization, personnel and management to carry out the requirements of [the Milbank Agreement] in a reasonably expeditious and economical manner consistent with the interests of" Milbank.[9]

Approximately ten months after entering into the Milbank Agreement with Pointe, DIV005 independently entered into a contract with SK on October 26, 2022, wherein SK agreed to perform steel erection labor for DIV005 (the "SK Subcontract").[10] The Milbank Defendants were not involved in negotiating or executing the SK Subcontract and are not parties to it.[11] SK's President and Rule 30(b)(6) designee, Mark King, confirmed this unequivocally in sworn deposition testimony: when specifically asked whether Pointe, Milbank, or Belpointe executed the SK Subcontract, Mr. King responded, "No."[12] Mr. King further confirmed that no Milbank Defendant made any contractual commitment to SK, whether written or oral.[13]

---

[7] *Id.* ¶ 3.

[8] *Id.*

[9] Milbank Agreement, ECF No. 125-3 § 1.1.2.

[10] ECF No. 138 ¶ 5.

[11] *Id.* ¶ 6.

[12] *Id.* ¶¶ 7–8.

[13] *Id.* ¶ 9.

The SK Subcontract expressly incorporates the Milbank Agreement between Pointe and DIV005, "except that any payment provisions are not incorporated."[14] And the Milbank Agreement specifically obligates DIV005, not the Milbank Defendants, to pay all sub-subcontractors engaged for the steel work.[15]

The Milbank Agreement further allocates the risk of nonpayment to DIV005, providing that DIV005 "assumes the risk of non-payment" in the event the Owner does not pay due to DIV005's own nonperformance.[16] SK understood the payment scheme and submitted all payment applications solely to DIV005, never to any Milbank Defendant.[17]

### 2.    DIV005's Failure to Perform and Pointe's Payments to DIV005

DIV005 repeatedly failed to mobilize adequate manpower or supply required materials, and Pointe thus issued multiple schedule accommodations throughout the summer and fall of 2022, attempting to keep the Project on track.[18] When DIV005 failed to cure its defects or improve performance, Pointe issued a formal Notice of Default on October 6, 2022, and a second follow-up notice on October 27, 2022, indicating that DIV005's performance had

---

[14] *Id.* ¶ 10; *see also* SK Subcontract ECF No. 125-5 § 3.2.

[15] ECF No. 138 ¶ 11; *see also* ECF No. 125-4 § 5.4 (stating that DIV005 "shall include in its own subcontracts and purchase orders a provision obligating [DIV005] to pay its own sub-subcontractors and suppliers within [DIV005's] agreed terms of receipt of payment from [Pointe]").

[16] ECF No. 138 ¶ 12; *see also* ECF No. 125-4 § 5.3.4.

[17] ECF No. 138 ¶ 13.

[18] *Id.* ¶ 14.

worsened.[19] Shortly thereafter, on November 23, 2022, DIV005 sought Chapter 11 bankruptcy protection.[20]

Throughout the period of DIV005's performance, Pointe paid DIV005 approximately $958,550 pursuant to the Milbank Agreement.[21] DIV005 accepted these payments but did not pass them through to SK.[22] Nevertheless, SK never submitted an invoice or payment application to any Milbank Defendant; all payment requests were directed exclusively to DIV005.[23]

Under the Milbank Agreement, DIV005 was obligated to perform steel work valued at approximately $2,375,000.[24] In paying DIV005 approximately $958,550, the Milbank Defendants thus paid for 40% of the work called for under that Milbank Agreement, while receiving, at most, 25% of the steel work SK was obligated to perform under the contract.[25]

### 3.    SK's Work on the Project

By the time DIV005 filed for bankruptcy, SK had already pulled off of the Project because DIV005 had failed to deliver the requisite materials for SK to complete its work.[26] Following DIV005's defaults and SK's cessation of work, Pointe retained Mekael Engineering & Consulting, LLC ("Mekael"), an independent engineering consultant, to evaluate the steel

---

[19] *Id.* ¶ 15.

[20] *Id.* ¶ 16.

[21] *Id.* ¶ 22.

[22] *Id.* ¶¶ 23–25.

[23] *Id.* ¶¶ 26–27.

[24] *Id.* ¶ 3.

[25] *Id.* ¶ 22.

[26] *Id.* ¶ 17.

installed by DIV005 and SK.[27] Mekael performed a site visit on December 12 and 22, 2022, and identified more than twenty-two deficiencies in SK's work, including missing bay window beams; partially installed first-floor walls despite SK's contrary assertions; damaged studs; improper weld spacing; misaligned and discontinuous load-bearing elements; and structural conditions requiring immediate correction.[28]

Based on Mekael's findings, Pointe retained M.S. Ironworks, Inc. ("MSI") to remedy SK's work and complete the steel erection scope.[29] MSI's invoices reflect extensive re-welding, bolt replacement, structural realignment, and completion of tasks SK left unfinished.[30] The Milbank Defendants ultimately paid MSI a total of $197,641.00 to complete the work SK was originally contracted to complete on the Project.[31]

### 4. SK's Payment Applications and Communications Concerning Payment with DIV005

SK produced three payment applications submitted exclusively to DIV005: the first on October 25, 2022 (for work through 10/31/22) seeking payment in the total amount of $115,765.20; the second for the period ending November 15, 2022 which totaled $177,867.73;

---

[27] *Id.* ¶ 19. The Milbank Defendants state that they hired Mekael "[f]ollowing SK's abandonment of the Project." SK denies that it abandoned the project but does not dispute that the Milbank Defendants hired Mekael.

[28] *Id.* ¶ 20.

[29] *Id.* ¶ 21. The Milbank Defendants characterize SK's work as "defective." SK asserts, by way of further answer, that at the time that the Milbank Defendants hired MSI, SK had not finished its work on the project due to a lack of materials which were to be supplied by DIV005 prior to the filing of its Bankruptcy Petition. Nevertheless, SK does not dispute that its work on the Project was not completed at the time that MSI was hired.

[30] *Id.*

[31] *Id.*

and the last for the period ending November 30, 2022 which totaled $318,080.89.[32] These three submissions were directed solely to DIV005, consistent with the SK Subcontract, and reflect the work for which SK seeks payment in this action.[33]

At the time SK submitted its first payment application on October 25, 2022, SK and DIV005 had not yet executed a written subcontract.[34] In response to receiving that first application, a representative of DIV005 informed SK that DIV005 "cannot pay any monies till we have the signed contract . . . Our finance has to have something to bill against. I want to get you paid!"[35] DIV005 further stated: "When we have the contract and the SOV I can get you paid!"[36] At the time of this communication, DIV005 did not indicate that it had not been paid by the owner or by any of the Milbank Defendants, nor did it disclose any financial difficulties.[37] Moreover, the SK Subcontract was not fully executed until October 26, 2022, one day before Pointe Builders issued its second Notice of Default to DIV005.[38] DIV005 did not inform SK of either default notice when communicating about SK's payment applications, including when it made its statements that "I want to get you paid!" and "I can get you paid."[39]

---

[32] *Id.* ¶ 26.

[33] *Id.*

[34] *Id.* ¶ 27.

[35] *Id.*

[36] *Id.* ¶ 28.

[37] Id.

[38] *Id.* ¶ 29.

[39] *Id.*

On November 30, 2022, the same date as SK's third payment application, SK's President, Mark King, emailed Cameron McCord, who was acting on behalf of DIV005, stating:

> Spoke with Seth (Div005) yesterday about getting a letter to Belpoint (GC Milbank job) stating giving them authority to pay S K directly or issue the joint check as they wanted a month ago. We need to get paid up to current amount due then figure out if Div005 will be continuing the project or signing off on it?? We need something right away as we are past due in the amount of 177k +/-[40]

McCord responded the same day, stating: "Div005 is fine with SK reaching out to be paid directly or by joint check."[41] SK's counsel, Patrick Blair, then replied: "Please sign the joint check agreement and then I will reach out to the gc."[42] SK and DIV005 executed the joint check agreement ("JCA") on February 3, 2023.[43]

Plaintiff originally asserted that the Milbank Defendants represented that they would sign the JCA, too.[44] In discovery however, SK produced no evidence—no emails, text messages, notes, or any other written communication—of any representation that any Milbank Defendant stated, promised, or assured SK that they would sign a joint check agreement or that SK would be paid.[45] During his deposition, Mark King repeatedly admitted that he could not identify any document reflecting a JCA promise; no one at Pointe Builders "promised" or

---

[40] ECF No. 125-13 at 4.

[41] *Id.* at 3.

[42] *Id.*

[43] ECF No. 125-6, King Dep. 66:11–68:3 (testifying about the joint check agreement between DIV005, SK, and Pointe, though admitting that Pointe never signed the joint check agreement). Citations to ECF No. 125-6, the King Deposition, refer to the internal page and line numbering, rather than CM/ECF pagination; *see also* ECF No. 138 ¶ 33.

[44] ECF No. 58 ¶¶ 46, 53.

[45] ECF No. 138 ¶ 45.

"guaranteed" a JCA; no Milbank Defendant promised to pay SK directly; and SK ultimately relied not on any promise but on "faith" that the owners "would take care of us."[46]

### 5.      SK's Lack of Pursuit of Statutory and Contractual Remedies

Following DIV005's failure to perform, non-payment to SK, and subsequent bankruptcy, SK did not file a mechanic's lien under Conn. Gen. Stat. § 49-33; nor did it file a proof of claim in DIV005's bankruptcy case.[47]

### B.      Procedural History

Plaintiff commenced the instant action by filing the original Complaint in this matter on May 16, 2023.[48] Following the Court's denial of the Milbank Defendants' Motion to Dismiss,[49] Plaintiff filed an Amended Complaint.[50] The Milbank Defendants filed their Answer on August 28, 2024.[51]

The Milbank Defendants moved for summary judgment on January 20, 2026.[52] Simultaneously, the Milbank Defendants moved for sanctions against Plaintiff (the "Motion

---

[46] *Id.* ¶¶ 36–38, 41.

[47] *Id.* ¶¶ 46–47.

[48] Compl., ECF No. 1.

[49] Order Den. Mot. to Dismiss, ECF No. 49.

[50] ECF No. 58.

[51] ECF No. 63.

[52] Mot. for Summ. J., ECF No. 125.

for Sanctions").[53] Plaintiff responded to the Motion on February 10, 2026 (the "Response").[54] The Milbank Defendants replied on February 24, 2026 (the "Reply").[55] Upon review of the Response, the Court discovered that despite reference to an "Exhibit A," a Local Rule 56(a)(2) Response to the Milbank Defendants' Statement of Undisputed Material Facts, the Response was missing such statement. Accordingly, the Court ordered Plaintiff to file its Local Rule 56(a)(2) statement on the docket; on May 8, 2026, Plaintiff obliged.[56] On May 11, 2026, the Milbank Defendants filed their response to Plaintiff's filing of its Local Rule 56(a)(2) statement.[57]

## II.   <u>LEGAL STANDARD</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[53] Mot. for Sanctions, ECF No. 126. The Court has since granted the Motion for Sanctions, which sought, as relevant to this Motion, an order precluding SK from offering any evidence, testimony, or affidavits that contradict or supplement the testimony provided by its Rule 30(b)(6) witness on the noticed topics and deeming SK bound by its Rule 30(b)(6) witness on the noticed topics. *See* ECF No. 140. Thus, in adjudicating the Motion, the Court treats SK as bound by the testimony of its Rule 30(b)(6) witness on the noticed topics and does not consider any contrary evidence inconsistent with that testimony.

[54] Pl's Resp. to Mot. for Summ. J., ECF No. 134.

[55] Defs' Reply to Pl's Resp. to Mot. for Summ. J., ECF No. 135.

[56] ECF No. 138.

[57] ECF No. 139.

Disagreements concerning immaterial or minor facts thus cannot preclude summary judgment. *See Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir.1990). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. The court's role, therefore, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022). Summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

The initial burden rests on the moving party to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once the movant brings forth an absence of such issues, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). To survive a motion for summary judgment, the nonmovant, "must do more than simply show that there is some metaphysical doubt as to the material facts [or] rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). The mere existence of "a scintilla of evidence" in support of the nonmovant's position is insufficient; there must be enough evidence on which the jury reasonably could rule for it. *Stapleton v. Barrett Crane Design & Eng'g,* 725 F. App'x 28, 30 (2d Cir. 2018).

## III.    DISCUSSION

### A.    Count Two: Breach of Contract as against Pointe

In Count Two of the Amended Complaint, Plaintiff alleges that Pointe "contracted with DIV005, LLC to provide certain labor, materials, and equipment," that "SK is a third-party

11

beneficiary of the contract between" Pointe, Milbank, and DIV005, and that SK now seeks to recover based on the breach of contract by DIV005.[58] The Milbank Defendants respond that none of the Milbank Defendants contracted with SK, and that SK's third-party beneficiary theory fails as a matter of law.[59]

First, the Court notes that there is no dispute over the fact that none of the Milbank Defendants, including Pointe—against whom the breach of contract claim is brought—directly contracted with SK, including as part of the SK Subcontract. The record reflects no evidence of a contract between Pointe and SK, and the SK Subcontract was entered only by SK and DIV005.[60] SK's President and 30(b)(6) witness, Mark King, testified that none of the Milbank Defendants signed, negotiated, or were parties to the SK Subcontract.[61] Nor does the Amended Complaint allege that Pointe or any other Milbank Defendant breached the SK Subcontract.

Because the existence of a contract is an essential element of a breach of contract claim, its absence means that SK may not maintain a direct breach of contract claim against the Milbank Defendants, none of whom were parties to the SK Subcontract. *See Patrick v. Levesque*, No. HFH-CV-22-6022263-S2023, WL 2662039, at *2 (Conn. Super. Ct. March 24, 2023) ("The formation of an agreement is the necessary antecedent to any claim of a breach."); *FCM Grp., Inc. v. Miller*, 300 Conn. 774, 797 (2011) ("a person who is not a party to a contract (i.e., is not named in the contract and has not executed it) is not bound by its terms."). Indeed, a defendant may not be held liable for breach of contract when a plaintiff cannot identify any

---

[58] ECF No. 58 ¶¶ 37–42.

[59] Mem. in Supp., ECF No. 125-1 at 12–16.

[60] ECF No. 138 ¶ 5.

[61] *Id.* ¶¶ 6–7.

contract provision breached by defendant's conduct. *See Keller v. Beckenstein*, 117 Conn. App. 550, 560–61 (2009); *see also Bruno v. Whipple*, 138 Conn. App. 496, 510 (2012) (affirming summary judgment in favor of defendant on breach of contract claim because "there was no genuine issue of material fact that [defendant] was not a party to that contract and thus that he could not be held liable for its breach.").

SK next claims that Pointe breached the Milbank Agreement and SK is entitled to recover as a third-party beneficiary of the Milbank Agreement. But SK's third-party beneficiary theory fails as a matter of law. The law regarding the creation of contract rights in third parties in Connecticut is well settled. "The ultimate test to be applied in determining whether a person has a right of action as a third-party beneficiary is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third-party beneficiary." *Anderson v. Town of Bloomfield*, 203 Conn. App. 182, 191 (2021) (cleaned up). Intent must be clear and must appear from the contract itself. *Id; FCM Grp., Inc.,* 300 Conn. at 797 ("in order to bind a third person contractually, an expression of assent by such person is necessary."). Here, the Court cannot discern any such intent on the parties' end; nor does the record reflect assent by SK as a third-party beneficiary of the Milbank Agreement.

The SK Subcontract expressly provides that the Milbank Agreement is incorporated "except that any payment provisions are not incorporated."[62] This language forecloses any argument that SK may invoke the payment provisions of the Milbank Agreement or that Pointe undertook any obligation to pay SK directly. Indeed, the Milbank Agreement assigns payment responsibility exclusively to DIV005. The Agreement specifically provides that DIV005 "shall

---

[62] *Id.* ¶ 10.

include in its own subcontracts … a provision obligating [it] to pay its own sub-subcontractors…."[63] The Milbank Agreement likewise places the risk of nonpayment entirely on DIV005. Under the Agreement, DIV005 "assumes the risk of nonpayment to the extent the Owner does not pay the Contractor due to Subcontractor's performance (or lack thereof)."[64] Far from suggesting an intent to confer enforceable rights on SK or any other third party, the SK Subcontract intentionally excludes any payment obligation running from the Milbank Defendants to SK. And the Milbank Agreement, in turn, assigns payment responsibility to DIV005, places the risk of nonpayment on DIV005, and requires DIV005 to pay its own subcontractors.

"When there is definitive contract language, the determination of what the parties intended by their…commitments is a question of law…. If a contract is unambiguous within its four corners, intent of the parties is a question of law." *Noroton Heights Shopping Ctr., Inc. v. Phil's Grill, LLC*, 207 Conn. App. 211, 219–20 (2021). Here, the plain language of both the SK Subcontract and the Milbank Agreement defeats SK's third-party beneficiary theory. Nothing in either agreement reflects a clear intent by Pointe or any other Milbank Defendant to assume a direct contractual obligation to SK or to confer enforceable rights upon SK as a third-party beneficiary. Because Connecticut law requires clear contractual intent to create enforceable third-party beneficiary rights, and no such intent appears within the four corners of the agreements, SK's breach of contract claim against the Milbank Defendants fails as a

---

[63] *Id.* ¶ 11.

[64] *Id.* ¶ 12; ECF No. 125-4 § 5.3.4.

matter of law. Summary judgment in favor of the Milbank Defendants is thus proper on Count Two.

### B.    Count Three: Misrepresentation as against Pointe

In Count Three of the Amended Complaint, Plaintiff alleges that "Pointe Residential made material factual misrepresentations to SK that it would sign a Joint Check Agreement with SK and DIV005, LLC."[65] In response, the Milbank Defendants assert that "no Milbank Defendant made any representation, much less a misrepresentation, about signing a joint check agreement."[66]

The elements of a claim for negligent misrepresentation are: "(1) that a misrepresentation of fact was made; (2) that the party making it knew or should have known that it was untrue; (3) that the other party reasonably relied upon it; and (4) that the latter suffered pecuniary harm as a result thereof." *Drena v. Bank of Am., N.A.*, No. 15-CV-176 (VAB), 2017 WL 6614094, at *14 (D. Conn. Dec. 27, 2017) (cleaned up). SK's claim fails at the first element: the record does not reflect that any of the Milbank Defendants made any misrepresentations of fact to SK. Specifically, SK asserts that Pointe represented that it would enter into a JCA, and that SK relied on this supposed representation in performing work.[67] However, SK has not pointed to no evidence of such representation, whether written or oral.

Mark King, SK's President and 30(b)(6) witness, repeatedly admitted that no one at Pointe, or any Milbank Defendant, ever promised or guaranteed SK that they would sign a JCA. When asked if he could identify any document where Pointe promised to sign a JCA,

---

[65] ECF No. 58 ¶ 53.

[66] ECF No. 125-1 at 16.

[67] ECF No. 58 ¶¶ 45–46.

Mr. King testified: "I don't know that they had promised to do it…"[68] When asked whether anyone at Pointe guaranteed and/or promised that they would sign a JCA, Mr. King testified: "No."[69] When again asked whether Pointe issued any guarantees to SK regarding signing a JCA, Mr. King testified: "No."[70] When asked directly whether anyone with the Milbank Defendants explicitly told him that SK would be paid, Mr. King testified: "Not explicitly, no."[71] When asked whether SK received any type of an agreement from the Milbank Defendants that they would sign a JCA, Mr. King testified: "Nope…"[72] When then asked whether the Milbank Defendants verbally promised that they would pay SK, Mr. King testified: "No."[73]

Moreover, Mr. King could not identify a single document or communication containing any such representation. He testified that discussions with the Milbank Defendants concerning the JCA allegedly occurred by e-mail and phone calls.[74] Yet SK produced no emails, no text messages, no notes, or no contemporaneous writing of any kind supporting that testimony or identifying any purported misrepresentation. The total absence of corroborating documents confirms King's testimony that no representation was made.

Indeed, when asked on what SK actually relied upon in performing its work, given that it was operating under a separate contract with DIV005, Mr. King admitted that SK performed

---

[68] ECF No. 138 ¶ 36; ECF No. 125-6 64:6–11.

[69] ECF No. 138 ¶ 37; ECF No. 125-6, 65:2–5.

[70] ECF No. 125-6, 64:12–13.

[71] ECF No. 138 ¶ 38; ECF No. 125-6, 66:6–8.

[72] ECF No. 138 ¶ 39; ECF No. 125-6, 80:1–5.

[73] ECF No. 138 ¶ 40; ECF No. 125-6, 80:6–8.

[74] ECF No. 125-6, 60:4–6, 62:17–19, 63:11–13.

its work not on a promise or a guarantee, but on "faith"—that "the owners and Belpointe was going to take care of us."[75] "Faith" in how another party might behave cannot constitute reliance on a factual representation, and it certainly is not reliance on a misrepresentation. It is, instead, merely hope, speculation, and assumption, none of which is sufficient to survive summary judgment. What is needed is actual reliance. *See Giametti v. Inspections, Inc.*, 76 Conn. App. 352, 365 (2003) ("in the absence of any other evidence of actual reliance by the plaintiff, he cannot prevail in his negligent misrepresentation claim."); *Stuart v. Freiberg*, 316 Conn. 809, 829 (2015) ("Without *actual* reliance, reasonable reliance cannot possibly exist.").

Based on the above, the Court grants summary judgment in favor of the Milbank Defendants on Count Three, negligent misrepresentation.

## C.    Count Four: Unjust Enrichment as against Milbank and Belpointe

In Count Four of the Amended Complaint, Plaintiff alleges that Milbank and Belpointe were unjustly enriched by SK's work.[76] The Milbank Defendants respond that the claim fails for three reasons: first, SK's available remedies for the money it believes it was owed lie exclusively in the Subcontract; second, SK has failed to make the required showing that the Milbank Defendants benefited from SK's efforts *and* that they failed to pay DIV005 or that there was any fraud involved; and third, that any benefit received by the Milbank Defendants was not unjust, as they were forced to pay additional funds to complete and repair the work for which SK now seeks payment.[77]

---

[75] ECF No. 138 ¶ 41.

[76] ECF No. 58 ¶¶ 58–62.

[77] ECF No. 125-1 at 23–24.

"Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006) (cleaned up). "[P]roof of an operative contract [is] incompatible with recovery on an unjust enrichment theory." *Id.* at 570, n. 12; *see also Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 374 (D. Conn. 2012) ("[U]nder Connecticut law, 'proof of a contract enforceable at law precludes the equitable remedy of unjust enrichment.'") (cleaned up).

Here, SK's unjust enrichment claim fails because the record reflects the existence of an enforceable contract that governs the subject matter for which SK seeks recovery. There is no dispute that SK's alleged entitlement to "unpaid work" directly arises from the SK Subcontract.[78] SK alleges it provided "labor, materials, and equipment" at the Project pursuant to that Subcontract,[79] and it seeks "$302,900.81" specifically for "unpaid work under the Subcontract."[80] Thus, the damages SK seeks in unjust enrichment fall squarely within the circumstances specified in the SK Subcontract, rendering equitable relief unavailable. *See Stevens v. Landmark Partners, Inc.*, No. 3:09-cv-00498 (WWE), 2012 WL 13026652, at *7 (D. Conn. July 27, 2012) ("Indeed, lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment.").

---

[78] ECF No. 58 ¶¶ 15, 20, 22, 24, 26, 32–34, 38, 40–41.

[79] *Id.* ¶¶ 24, 26.

[80] *Id.* ¶¶ 34, 41.

Connecticut courts have long held that "[t]he mere fact that a third party benefits from a contract between two other parties doesn't make that party responsible in quasi contract or unjust enrichment." *Enterprise Plumbing & Heating, Inc. v. Cohn*, No. CV 910317322S, 1996 WL 222193, at *5 (Conn. Super. Ct. Apr. 2, 1996). Based on this principle, courts have routinely rejected unjust enrichment claims brought by subcontractors seeking to leapfrog their contractual counterparty and recover directly from upstream parties. *See, e.g., Kelley v. Five S Grp., LLC*, 136 Conn. App. 57, 67 (2012) (reaffirming that where the parties' relationship is governed by a contract and the plaintiff seeks payment for work performed under that contract, unjust enrichment does not lie absent a finding that the plaintiff performed services "not contemplated" by the contract); *Suntech of Connecticut, Inc. v. Lawrence Brunoli, Inc.*, No. HHDCV095030131S, 2011 WL 2150585 at *7 (Conn. Super. Ct. May 4, 2011) (holding that where "[t]here is no showing that there is a lack of remedy under the contract," even when "neither the contract nor the statute permit a direct cause of action against the owner of the project.").

As in *Suntech*, SK bargained for, and still has, contractual remedies against DIV005. SK had a contract with DIV005 that defined its payments rights and legal remedies. As the Milbank Defendants point out, SK could have filed a mechanic's lien under Conn. Gen. Stat. § 49-33. It could have pursued its claim in DIV005's bankruptcy. SK chose to do neither. But it cannot now bring a claim of unjust enrichment against the Milbank Defendants, with whom it never contracted. In effect, SK allowed its lien rights and bankruptcy claim to lapse and now seeks to shift the insolvency risk it voluntarily assumed onto Milbank and Belpointe. SK may not do so. Indeed, "[i]f a subcontractor could bring suit willy nilly against an owner or developer… chaotic results would occur." *Enterprise Plumbing*, 1996 WL 222193 at *5.

SK's unjust enrichment claim fails for the separate reason that it cannot demonstrate that any Milbank Defendant was unjustly enriched. Under Connecticut law, a subcontractor cannot establish unjust enrichment against an owner or upstream party where the owner paid the contractor for the work at issue and there is no claim of fraud. *Garwood & Sons Constr. Co., Inc. v. Centos Assocs. Ltd. P'ship*, 8 Conn. App. 185, 188 (1986).

Here, SK alleges no fraud between DIV005 and the Milbank Defendants, and Milbank and Belpointe paid the intermediary contractor, DIV005, in accordance with the Milbank Agreement. Specifically, Milbank and Belpointe paid DIV005 approximately $958,550 under the Milbank Agreement, representing nearly 40% of the steel scope of work for which DIV005 agreed to complete, despite providing only 25% of the work called for under the Agreement.[81] DIV005 accepted these funds and represented that it would use them to pay SK and other sub-subcontractors.

Additionally, any alleged enrichment was not unjust because the Milbank Defendants did not receive SK's work "for free." On the contrary, after SK and DIV005 abandoned the Project, Pointe was forced to incur substantial additional costs, totaling $197,641.00, to remediate structural deficiencies, correct defective welding and misalignment, and complete portions of the steel scope SK left unfinished.[82] The Milbank Defendants thus incurred substantial economic loss from the circumstances underlying SK's claims. Far from being unjustly enriched, the Milbank Defendants had to pay twice: once to DIV005, and again to a separate party to correct and complete SK's incomplete work.

---

[81] ECF No. 138 ¶¶ 18, 22.

[82] *Id.* ¶¶ 20–21.

Accordingly, SK cannot demonstrate that the Milbank Defendants have been unjustly enriched. *See Providence Elec. Co. v. Sutton Place, Inc.*, 161 Conn. 242, 246–47 (1971) (rejecting unjust enrichment claim by subcontractor against the owner because the owner had paid its general contractor). The Court thus grants summary judgment in favor of the Milbank Defendants on Count Four, unjust enrichment.

## IV.    **CONCLUSION**

For the foregoing reasons, the Motion is **GRANTED**. The Clerk of Court is respectfully directed to dismiss the Milbank Defendants from this matter.

**SO ORDERED.**

Hartford, Connecticut
June 11, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge